UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THERAPYCARE RESOURCES, INC., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:03-cv-2020-LJM-WTL |
| ) | |
| CARPAL THERAPY, INC., ) | |
| Defendant. ) | |

## ORDER

This cause is before the Court on defendant's, Carpal Therapy, Inc., Motion to Reconsider, the Court's February 23, 2005, Order, and on Carpal Therapy's Motion to Set Aside Consent Judgment, February 23, 2005, and December 2, 2004, Orders Pursuant to Federal Trial Rule 60(b). The Court held a hearing on these matters on August 26, 2005. Essentially, Carpal Therapy contends that the Court should set aside the consent judgment in this cause because its original attorney, Jennifer Graham ("Graham"), committed "excusable neglect" when she failed to ensure that examples were attached to the consent judgment, when she failed to finalize the consent judgment after the September 2, 2004, hearing, when she failed to request a continuance based on her poor health on September 2, 2004, despite her client's request to do so, and when she failed to ensure that an oral agreement regarding the use of David A. Graston's full name in sponsored links got into the final consent agreement read to the Court at the September 2, 2004, hearing. Plaintiff, TherapyCare Resources, Inc. ("TherapyCare"), asserts that either Graham did not neglect to do anything on September 2, 2004, or Graham's mistakes were not excusable.

Having considered the parties' arguments, the Court **DENIES** Carpal Therapy's Motion to Reconsider and its Motion to Set Aside.

## I. FACTUAL BACKGROUND[1]

TherapyCare[2] and Carpal Therapy have a long history, a brief synopsis of which may help give structure to the discussion to follow. TherapyCare was founded in 1994 by Michael Arnolt ("Arnolt"), David A. Graston ("Graston"), and Andre Hall ("Hall"). The company owns a patent on instruments for performing Instrument Assisted Soft Tissue Mobilization ("IASTM"). Sept. 2, 2004 Hr'g Tr. at 8. In addition, the company promotes the sale and use of these instruments through what the company has described as the Graston Technique. *Id.* at 12. The tools and the technique were invented by Graston. *Id.* at 48-49.

In September 1996, Graston was terminated as an employee of TherapyCare by an action of the Board of Directors. *Id.* at 20. The company signed a consulting agreement with Graston for the calendar year 1997, but it was terminated mid-year. *Id.* Upon termination of the consulting agreement, Graston was subject to a three-year non-compete agreement. *Id.* at 21-22.

Arnolt bought Graston's shares in TherapyCare during Graston's personal bankruptcy proceedings. *Id.* at 22. In addition, TherapyCare purchased the rights to the Graston Technique.

Graston founded Carpal Therapy in the year 2000; the company also does business as grastonhallmethod.com. *Id.* at 50. Graston is sole owner of the company. *Id.* at 47. Carpal Therapy is in the business of selling IASTM tools, and teaching a technique for using those tools, which Carpal Therapy refers to as the Graston-Hall Method. *Id.* at 50.

On December 19, 2003, TherapyCare filed the instant suit alleging, among other claims, that

---

[1]The facts in this section are taken from the transcript of the September 2, 2004, hearing on Plaintiff's Motion for Preliminary Injunction, the parties briefs on the instant motions, and the hearing on the instant motions held on August 25, 2005.

[2]TherapyCare was formerly known as Grastech.

Carpal Therapy was infringing its trademark of "Graston Technique," by using the terms "Graston Method" and/or "Graston-Hall Method" to describe Carpal Therapy's IASTM methodology. Compl. ¶¶ 30-32. On September 2, 2004, the Court held a hearing on TherapyCare's Motion for Preliminary Injunction on all of its claims.

Prior to the preliminary injunction hearing, the parties indicated to the Court that they might be able to settle all claims, include claims that alleged trademark infringement, unfair competition and false advertising under the Lanham Act, common law unfair competition, and copyright infringement. The Court offered to allow the parties the use of the courtroom and the witness room to negotiate such a settlement. The parties did negotiate an agreement and such agreement was read into the record on September 2, 2004. When the Court asked Carpal Therapy whether or not what was read into Court was Carpal Therapy's understanding of the agreement, Carpal Therapy's counsel responded: "Yes, Your Honor, I believe he accurately stated our agreement." Hr'g Tr. at 5.

On September 10, 2004, TherapyCare, by counsel, docketed a written version of the consent judgment for the Court's signature. On September 25, 2004, Carpal Therapy, by counsel, submitted a "Notice Regarding Consent Judgment," in which Carpal Therapy expressed concern that some language regarding the intent of the parties be added. The Court found that the consent judgment read into the record, and the written proffer clearly delineated the intent of the parties and on September 20, 2004, the Court entered the consent judgment, substantially unchanged from the version submitted to it on September 10, 2004.[3]

The consent judgment reads, in relevant part:

---

[3] An amended version was later submitted by the parties to correct certain spellings in the document; the Court granted TherapyCare's motion to make those corrections. The text of the consent judgment here reflects the corrected version.

**CONSENT JUDGMENT**

The parties have reached by mutual agreement to resolve all of the issues except the patent issues, including plaintiff's, TherapyCare Resources, Inc. ("TherapyCare"), claims against defendant, Carpal Therapy, Inc. ("Carpal Therapy"), alleging trademark infringement, unfair competition and false advertising under the Lanham Act, common law unfair competition, and copyright infringement, and to agree to an entry of consent judgment in favor of TherapyCare on all of those issues to include the following terms:

Carpal Therapy for purposes of this agreement and judgment means Carpal Therapy, Inc., David Graston and all dealers, distributors and instructors or others who promote Carpal Therapy's goods and/or services;

By October 4 of 2004, Carpal Therapy will remove all allegedly false statements from all materials and supply modified copies of offending materials to the firm of Barnes & Thornburg to be reviewed under Attorney's Eyes Only designation;

By October 4 of 2004, Carpal Therapy will cease distributing and/or using all copies of its manual or other materials that contain allegedly copied portions, including portions found at page 15 through 22, 29 through 31, 33 through 46, 49 through 53 and 55 through 60 of Carpal Therapy's current manual.

If Carpal Therapy elects to publish a different manual, that manual will not contain any portions copied from Therapy Care Resources. The manual otherwise will comply with the trademark provisions of this agreement and Carpal Therapy will send replacement copies of the modified manual to its existing customers.

By October 4 of 2004, Carpal Therapy will use the word Graston only to refer to David A. Graston and then only in a font or typeface identical to the surrounding copy or text in which it is placed.

By October 4 of 2004, Carpal Therapy will not use, publish or encourage the use of the term Graston as part of a trademark, trade name, d/b/a, domain name, or in connection with any product or service or promotion of any product or service in competition with Therapy Care, such as for example use in a title, in a heading, as part of a label, or on Carpal Therapy's tools.

These trademark provisions or enforceable against both Carpal Therapy and David A. Graston, personally.

By November 3 of 2004, Carpal Therapy will request the return of existing tools and send a set of replacement tools to the following five entities: BMW, the University of Miami, Bloomington Hospital Inc. - Rebound, Dale J Buchberger, DC, and James T. Kurtz, DC.

The Parties agree to these terms and request the entry of an order and consent judgment consistent with those terms.

IT IS SO ORDERED this 20th day of September, 2004.

On November 15, 2004, TherapyCare filed its first Motion to Enforce Judgment.

TherapyCare contended that Carpal Therapy had violated the terms of the Consent Judgment when it used the phrase "David A. Graston's Latest" in a sponsored link on the internet. The Court agreed with TherapyCare that this term was a "heading" and therefore violated the clause of the Consent Judgment that prohibited the use of the term "Graston" in a heading.

On January 31, 2005, TherapyCare filed its Second Motion to Enforce Consent Judgment. In that motion, TherapyCare contended that Carpal Therapy had violated the terms of the Consent Judgment when it continued to use the term "David A. Graston's newest" in sponsored links, when it used "David A. Graston introduces . . ." as a heading on promotional literature, and when it used "David A. Graston introduces . . ." as a heading for a banner used at a trade show. The Court agreed with TherapyCare on the basis of the use of the terms in a promotional fashion.

On March 4, 2005, Carpal Therapy's counsel moved to withdraw herself and new counsel made an appearance on the same date. On March 4, 2005, Carpal Therapy filed its First Motion for Reconsideration of Order on Motion to Enforce Judgment. In addition, on March 22, 2005, Carpal Therapy filed a Motion to Set Aside Consent Judgment, and the Court's orders related thereto, pursuant to Rule 60(b).

## II. STANDARDS

### A. MOTION TO RECONSIDER

Motions to reconsider serve a limited function, to be used "where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v.*

5

*Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). The parties may not introduce evidence previously available but unused in the prior proceeding or tender new legal theories. *See In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986). A court may grant a motion to reconsider where a movant demonstrates a manifest error of law or fact. *In re Prince*, 85 F.3d at 324. A motion to reconsider is not an occasion to make new arguments. *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189, 192 n.7 (7th Cir. 1991).

### B. MOTION TO SET ASIDE

Carpal Therapy has moved to set aside the Consent Judgment, and the Court's subsequent orders that interpret and enforce such judgment, pursuant to Rule 60(b). Rule 60(b) provides, in relevant part:

> [U]pon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . (6) or any other reason justifying relief from the operation of judgment.

Fed. R. Civ. P. 60(b)(1), (4) & (6). More detailed standards are incorporated into the Court's discussion of the parties' arguments.

### III. DISCUSSION

### A. MOTION TO RECONSIDER

Carpal Therapy argues that the Court erred when it construed the Consent Judgment to require it to remove David A. Graston from its promotional materials when the document provides for the agreed way that the company could use Graston's name. In other words, Carpal Therapy

contends that the provision that allows the company to use Graston's full name truncates the requirements that the agreement puts upon the company's use of the term Graston for promotional purposes. At the hearing on these motions, Carpal Therapy also argued that, contrary to its argument in its briefs, that the Consent Agreement is ambiguous and the Court should use extrinsic evidence to resolve the conflict between the "David A. Graston" clause and the "Graston" clause.

In contrast, TherapyCare argues that the Court correctly construed the Consent Agreement as the unambiguous language of the agreement limits the use of the term "Graston," in promotional materials, regardless of whether or not the term was preceded by the "David A."

The Court finds, as it has in every instance, that the terms of the Consent Judgment are not ambiguous. The Consent Judgment allows Carpal Therapy to use Graston's full name as it is described in the "David A. Graston" clause. However, the Consent Judgment does not allow Carpal Therapy to use the term "Graston"

> as part of a trademark, trade name, d/b/a, domain name, or in connection with any product or service or promotion of any product or service in competition with Therapy Care, such as for example use in a title, in a heading, as part of a label, or on Carpal Therapy's tools.

Consent Judgment. As the Court has already pointed out, although perhaps not as specifically as it does here, Carpal Therapy may use Graston's name on such ordinary business items as business cards and personalized business stationary to identify Graston as an individual, however, it may not use Graston's name for promotional purposes of products or services in competition with TherapyCare. In other words, there are general business purposes that are not promotional. However, when the use of Graston's name is for a promotional purpose, such as on a banner at a trade show or as the key phrase in a sponsor link, such uses are promotional purposes and/or

headings, which are not allowed under the Consent Judgment.

For the foregoing reasons, the Court **DENIES** Carpal Therapy's Motion to Reconsider.

### B.  RULE 60(b) MOTION

Carpal Therapy contends that the Court should set aside the Consent Judgment for three reasons: the excusable neglect of Carpal Therapy's attorney who participated in drafting the Consent Judgment, Jennifer Graham; the Consent Judgment is void because there was not meeting of the minds; and the exceptional circumstances caused by Graham's negligence.  All three of Carpal Therapy's theories rely on the following alleged negligence of Graham:  her failure to submit exhibits that reflected appropriate uses for "David A. Graston" on Carpal Therapy's promotional materials; her failure to ensure that her client received a copy of the finalized document after the September 2, 2004, hearing; her failure to request a continuance of the September 2, 2004, hearing because of her health and at the request of her client; and her failure to ensure that the Consent Judgment addressed sponsor links and web addresses were included in the Consent Judgment read into the record on September 2, 2004.

On the other hand, TherapyCare contends that the Consent Judgment was negotiated fairly and that there was no neglect on the part of Graham.  If there was neglect, than it was inexcusable neglect, which is not a proper basis to set aside the Consent Judgment.  TherapyCare asserts that the "void" provision of Rule 60(b) was only intended to correct errors of jurisdiction or constitutionally protected rights, neither of which apply in this case.  Finally, TherapyCare argues that Carpal Therapy cannot have its argument two ways:  that Graham's negligence cannot be both inexcusable and exceptional circumstances.

The Court finds that none of the provisions of Rule 60(b) apply in this case. Rule 60(b)(4) states that the Court may set aside a judgment if the judgment is "void." "'A judgment is void for the purposes of Rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Robinson Eng'g Co. Ltd. Pension Plan & Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000). Carpal Therapy makes no argument to support any of these three reasons to declare the Consent Judgment void.

Carpal Therapy also argues that Graham's actions amounted to excusable neglect like that of the attorney in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380 (1993), and that the Court should set aside the Consent Judgment on that basis pursuant to Rule 60(b)(1). In *Pioneer*, the Supreme Court decided the question of "whether an attorney's inadvertent failure to file a proof of claim within the deadline set by the court can constitute 'excusable neglect' within the meaning of [Federal Rule of Bankruptcy Procedure 9006(b)(1)]." *Id.* at 383. The bankruptcy court had determined that the standard to measure "excusable neglect" was whether a party's failure to meet a deadline was "caused by circumstances beyond its reasonable control." *Id.* at 388. The Supreme Court's answer to the question turned on the plain meaning of the word "neglect." The Court found that "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or closer to the point for [its] purposes, 'to leave undone or unattended to *esp[ecially] through carelessness*.'" *Id.* (quoting Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added by Supreme Court; change to quoted material by Supreme Court). By applying the ordinary meaning of the term, the Court concluded that "excusable neglect" in Rule 9006(b)(1) permitted courts, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.*

9

The *Pioneer* Court also described the proper scope of "excusable neglect" under Rule 60(b)(1). Under Rule 60(b)(1), the *Pioneer* Court agreed with the Court in *Klapprott v. United States*, 335 U.S. 601, 613 (1949), when it described "neglect" as "'failure to defend . . . due to inadvertence, indifference, or careless disregard of consequences.'" *Id.* at 394 (quoting *Klapprott*, 335 U.S. at 613). In other words, the *Pioneer* Court suggested that "excusable neglect" under Rule 60(b)(1) "encompasses situations in which the failure to comply with a filing deadline is attributable to negligence," but does not encompass not failures to meet filing deadlines for reasons beyond the control of a party. *Id.*

In addition, the Supreme Court provided the following guidance for how to determine if any neglect is "excusable." The Court said:

> the determination is at bottom an equitable one, taking into account all the relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 1498. The Seventh Circuit adopted these standards for a Rule 60(b)(1) analysis in *Robb v. Norfolk & W.Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997).

The problem with Carpal Therapy's argument is that the alleged mistakes made by Graham are not the type of judicial process mistakes, nor the type of excusable neglect contemplated by Rule 60(b)(1). In *Pioneer* the excusable neglect at issue related to the time for filing a pleading. Similarly, other Seventh Circuit cases addressing Rule 60(b)(1), such as *Robb*, also focus on excusable neglect for filing a pleading. That is not the nature of the neglect alleged in this cause. In this cause, Carpal Therapy alleges that Graham failed to attach examples of allowable materials to the Consent Judgment, that Graham failed to inform Graston that the Consent Judgment read into

10

the record on September 2, 2004, was the final agreement, that Graham failed to request a continuance of the September 2, 2004, hearing because of her health and at the request of her client, and that Graham failed to ensure that the Consent Judgment addressed sponsor links and web addresses were included in the Consent Judgment read into the record on September 2, 2004. Even assuming all of these alleged failures on Graham's part were neglectful, or negligent, the Court cannot agree that they were excusable. First, Graham, on behalf of Carpal Therapy, agreed on the record on September 2, 2004, that the Consent Agreement read into Court was the agreement of the parties. Specifically, the record reads:

> THE COURT: Is that your understanding of the agreement for the defense?
>
> MS. GRAHAM: Yes, Your Honor, I believe he accurately stated our agreement.

Hr'g Tr. at 5. Second, Carpal Therapy raised an objection to the written version of the Consent Judgment after TherapyCare had submitted it to the Court, yet Carpal Therapy never raised anything about missing exhibits or missing language at that time. In other words, twice given the opportunity to point out that the Consent Judgment lacked certain key elements, Graham and Carpal Therapy failed to do so, a mistake for which Carpal Therapy has presented no excuse.

To the extent that Carpal Therapy really wants to argue that Graston entered into the Consent Judgment under the mistaken belief that it said something different than what the Court construed it to say, this is not the kind of "mistake" contemplated by Rule 60(b)(1). Such a mistake pertains to the negotiation of the Consent Judgment, not to the process of the Court to enforce the parties' rights under the contract. It is the later to which Rule 60(b)(1) is addressed, not the former. *See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 578 (10th Cir. 1996).

For those reasons, the Court finds that there is no reason to set aside the Consent Judgment

pursuant to Rule 60(b)(1).

Carpal Therapy also contends that the Court should set aside the Consent Judgment pursuant to Rule 60(b)(6), or for extraordinary circumstances created by Graham's negligence. However, the Seventh Circuit has found that Rule 60(b)(6) does not apply when attorney negligence is at issue. *See Easley v. Kirmsee*, 382 F.3d 693, 699 n.5 (7th Cir. 2004) (stating that "relief, under Rule 60(b)(6)'s catchall provision, for 'any other reason justifying relief from the operation of the judgment,' is unavailable when attorney negligence is at issue") (citing *Helm v. Resolution Trust Corp.*, 84 F.3d 874, 879 (7th Cir. 1996)).

To support its contention that Rule 60(b)(6) should apply here, Carpal Therapy relies upon *O'Brien v. Indiana Department of Correction*, 2004 WL 1242553 (S.D. Ind. June 1, 2004). In *O'Brien*, a civil rights plaintiff had failed to file an amended complaint even after five extensions of time from the court. The court dismissed the cause and entered final judgment against the civil rights plaintiff. Approximately seven months later, a new attorney filed an appearance for the civil rights plaintiff and moved for relief from judgment because the civil rights plaintiff's former attorney had simply abandoned his practice without notice to his clients. The *O'Brien* court found that this was not "excusable neglect," but it was in the interests of justice under Rule 60(b)(6) to set aside the judgment. *Id.* at *3. The *O'Brien* court reasoned that the civil rights plaintiff would have no real recourse against the attorney for negligence in a malpractice action because the attorney had disappeared. *Id.* In essence, the *O'Brien* court found this a heavy factor in granting relief. *Id.* at *4.

The Court finds the instant case different. Here, Graham did not abandon her entire practice or abandon her client in these proceedings; Graham gave Graston and Carpal Therapy what has amounted to bad advice. This is not the stuff of exceptional circumstances that gives rise to setting

aside a negotiated agreement. For this reason, the Court does not find exception circumstances in this case that justifies setting aside the Consent Judgment.

For the foregoing reasons, the Court **DENIES** Carpal Therapy's Motion to Set Aside.

## IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** defendant's, Carpal Therapy, Inc., Motion to Reconsider, the Court's February 23, 2005, Order, and **DENIES** defendant's, Carpal Therapy, Inc., Motion to Set Aside Consent Judgment, February 23, 2005, and December 2, 2004, Orders Pursuant to Federal Trial Rule 60(b).

IT IS SO ORDERED this 2nd day of September, 2005.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Michelle Kaiser Bray
SOMMER BARNARD ATTORNEYS, PC
mbray@sommerbarnard.com

Mary Jane Frisby
BARNES & THORNBURG
mfrisby@btlaw.com

Gregory Forrest Hahn
TABBERT HAHN EARNEST & WEDDLE LLP
greghahn@tabberthahn.com

Linda H. Havel
TABBERT HAHN EARNEST & WEDDLE LLP
lhavel@tabberthahn.com

Paul B. Hunt
BARNES & THORNBURG LLP
paul.hunt@btlaw.com

Arlene Rochlin
arochlin@sbcglobal.net