UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THERAPYCARE RESOURCES, INC., ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:03-cv-2020-LJM-WTL |
| ) | |
| CARPAL THERAPY, INC., ) | |
|     Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION TO SET ASIDE
CONSENT JUDGMENT OF SEPTEMBER 20, 2004,
UNDER RULE 60(b) &
TO DECLARE INVALIDITY AND CANCELLATION OF
TRADEMARK REGISTRATION NO. 2,680,924 UNDER 15 U.S.C. § 1119**

This cause is before the Court on defendant's, Carpal Therapy, Inc., Motion to Set Aside Consent Judgment of September 20, 2004 (and Related Subsequent Orders) Under Rule 60(b) and To Declare Invalidity and Cancellation of Trademark Registration No. 2,680,924 Under 15 U.S.C. § 1119. In short, Carpal Therapy contends that the consent judgment, negotiated by the parties and entered by the Court on September 20, 2004, should be set aside because plaintiff, TherapyCare Resources, Inc. ("TherapyCare"), fraudulently represented to Carpal Therapy and the Court that it had a trademark in the term "Graston Technique," when in fact it did not. In the alternative, Carpal Therapy argues that the cloud over the legitimacy of TherapyCare's mark justifies setting aside the judgment and allowing further discovery. TherapyCare opposes the motion and argues that there is no evidence of fraud and, essentially, that Carpal Therapy's arguments are not based on newly discovered evidence or theories, therefore, there is no reason to set aside the consent judgment under Federal Rule of Civil Procedure 60(b) ("Rule 60(b)").

For the reasons discussed herein, the Court **DENIES** Carpal Therapy's motion to set aside the consent judgment.

## I. **BACKGROUND**[1]

TherapyCare and Carpal Therapy have a long history, a brief synopsis of which may help give structure to the discussion to follow.[2]  TherapyCare was founded in 1994 by Michael Arnolt ("Arnolt"), David A. Graston ("Graston"), and Andre Hall ("Hall").  The company owns a patent on instruments for performing Instrument Assisted Soft Tissue Mobilization ("IASTM").  Sept. 2, 2004 Hr'g Tr. at 8.  In addition, the company promotes the sale and use of these instruments through what the company has described as the Graston Technique.  *Id.* at 12.  The tools and the technique were invented by Graston.  *Id.* at 48-49.

In September 1996, Graston was terminated as an employee of TherapyCare by an action of the Board of Directors.  *Id.* at 20.  The company signed a consulting agreement with Graston for the calendar year 1997, but it was terminated mid-year.  *Id.*  Upon termination of the consulting agreement, Graston was subject to a three-year non-compete agreement.  *Id.* at 21-22.

Arnolt bought Graston's shares in TherapyCare during Graston's personal bankruptcy proceedings.  *Id.* at 22.  In addition, TherapyCare purchased the rights to the Graston Technique.

Graston founded Carpal Therapy in the year 2000; the company also does business as grastonhallmethod.com.  *Id.* at 50.  Graston is sole owner of the company.  *Id.* at 47.  Carpal Therapy is in the business of selling IASTM tools, and teaching a technique for using those tools, which Carpal Therapy refers to as the Graston-Hall Method.  *Id.* at 50.

On December 19, 2003, TherapyCare filed the instant suit alleging, among other claims, that

---

[1]Most of the facts contained herein are taken from prior orders related to the consent judgment.

[2]TherapyCare was formerly known as Grastech.

2

Carpal Therapy was infringing its trademark of "Graston Technique," by using the terms "Graston Method" and/or "Graston-Hall Method" to describe Carpal Therapy's IASTM methodology. Compl. ¶¶ 30-32. On September 2, 2004, the Court held a hearing on TherapyCare's Motion for Preliminary Injunction on all of its claims.

In its pre-hearing brief, Carpal Therapy asserted, *inter alia*, that TherapyCare "did not apply for a trademark until long after it had information that David A. Graston was competing in the market under the name Graston-Hall Method." Def.'s Resp. in Opp'n to Prelim. Inj. ¶ 8.

On the morning of the preliminary injunction hearing, the parties indicated to the Court that they might be able to settle all claims, except the patent infringement claim, including claims that alleged trademark infringement, unfair competition and false advertising under the Lanham Act, common law unfair competition, and copyright infringement. The Court offered to allow the parties the use of the courtroom and the witness room to negotiate such a settlement. The parties did negotiate an agreement and such agreement was read into the record on September 2, 2004. When the Court asked Carpal Therapy whether or not what was read into Court was Carpal Therapy's understanding of the agreement, Carpal Therapy's counsel responded: "Yes, Your Honor, I believe he accurately stated our agreement." Hr'g Tr. at 5.

On September 10, 2004, TherapyCare, by counsel, docketed a written version of the consent judgment for the Court's signature. On September 25, 2004, Carpal Therapy, by counsel, submitted a "Notice Regarding Consent Judgment," in which Carpal Therapy expressed concern that some language regarding the intent of the parties be added. The Court found that the consent judgment read into the record, and the written proffer clearly delineated the intent of the parties and on September 20, 2004, the Court entered the consent judgment, substantially unchanged from the

version submitted to it on September 10, 2004.[3]

The consent judgment reads, in relevant part:

### CONSENT JUDGMENT

The parties have reached by mutual agreement to resolve all of the issues except the patent issues, including plaintiff's, TherapyCare Resources, Inc. ("TherapyCare"), claims against defendant, Carpal Therapy, Inc. ("Carpal Therapy"), alleging trademark infringement, unfair competition and false advertising under the Lanham Act, common law unfair competition, and copyright infringement, and to agree to an entry of consent judgment in favor of TherapyCare on all of those issues to include the following terms:

Carpal Therapy for purposes of this agreement and judgment means Carpal Therapy, Inc., David Graston and all dealers, distributors and instructors or others who promote Carpal Therapy's goods and/or services;

By October 4 of 2004, Carpal Therapy will remove all allegedly false statements from all materials and supply modified copies of offending materials to the firm of Barnes & Thornburg to be reviewed under Attorney's Eyes Only designation;

By October 4 of 2004, Carpal Therapy will cease distributing and/or using all copies of its manual or other materials that contain allegedly copied portions, including portions found at page 15 through 22, 29 through 31, 33 through 46, 49 through 53 and 55 through 60 of Carpal Therapy's current manual.

If Carpal Therapy elects to publish a different manual, that manual will not contain any portions copied from Therapy Care Resources. The manual otherwise will comply with the trademark provisions of this agreement and Carpal Therapy will send replacement copies of the modified manual to its existing customers.

By October 4 of 2004, Carpal Therapy will use the word Graston only to refer to David A. Graston and then only in a font or typeface identical to the surrounding copy or text in which it is placed.

By October 4 of 2004, Carpal Therapy will not use, publish or encourage the use of the term Graston as part of a trademark, trade name, d/b/a, domain name, or in connection with any product or service or promotion of any product or service in competition with Therapy Care, such as for example use in a title, in a heading, as part of a label, or on Carpal Therapy's tools.

These trademark provisions or enforceable against both Carpal Therapy and David A. Graston, personally.

By November 3 of 2004, Carpal Therapy will request the return of existing tools and send a set of replacement tools to the following five entities: BMW, the

---

[3]An amended version was later submitted by the parties to correct certain spellings in the document; the Court granted TherapyCare's motion to make those corrections. The text of the consent judgment here reflects the corrected version.

>University of Miami, Bloomington Hospital Inc. - Rebound, Dale J Buchberger, DC, and James T. Kurtz, DC.
>
>The Parties agree to these terms and request the entry of an order and consent judgment consistent with those terms.
>
>IT IS SO ORDERED this 20th day of September, 2004.

On November 15, 2004, TherapyCare filed its first Motion to Enforce Judgment. TherapyCare contended that Carpal Therapy had violated the terms of the Consent Judgment when it used the phrase "David A. Graston's Latest" in a sponsored link on the internet. The Court agreed with TherapyCare that this term was a "heading" and therefore violated the clause of the Consent Judgment that prohibited the use of the term "Graston" in a heading.

On January 31, 2005, TherapyCare filed its Second Motion to Enforce Consent Judgment. In that motion, TherapyCare contended that Carpal Therapy had violated the terms of the Consent Judgment when it continued to use the term "David A. Graston's newest" in sponsored links, when it used "David A. Graston introduces . . ." as a heading on promotional literature, and when it used "David A. Graston introduces . . ." as a heading for a banner used at a trade show. The Court agreed with TherapyCare on the basis of the use of the terms in a promotional fashion.

On March 4, 2005, Carpal Therapy's counsel moved to withdraw herself and new counsel made an appearance on the same date. On March 4, 2005, Carpal Therapy filed its First Motion for Reconsideration of Order on Motion to Enforce Judgment. In addition, on March 22, 2005, Carpal Therapy filed a Motion to Set Aside Consent Judgment, and the Court's orders related thereto, pursuant to Rule 60(b). After a hearing, those motions were denied by order dated September 2, 2005.

On June 20, 2005, Carpal Therapy, represented by new counsel, filed the instant motion. On September 2, 2005, the Court mooted the portion of the instant motion that was in the form a

declaratory judgment.

## II. **DISCUSSION**

In the instant motion, Carpal Therapy seeks to set aside the consent judgment under two provisions of Rule 60(b). First, pursuant to Rule 60(b)(3) Carpal Therapy asks that the Court find that TherapyCare procured Carpal Therapy's agreement to the consent judgment by fraud. Specifically, TherapyCare represented to the Court and to Carpal Therapy that the term "Graston Technique" was a trademark that "represents the goodwill and reputation of Therapy Care [sic] and that based on Therapy Care's [sic] exclusive and extensive use of the mark, substantial secondary meaning had attached to the mark." Def.'s Br. at 2. Carpal Therapy also asserts that TherapyCare made a similar assertion to the United States Patent and Trademark Office ("PTO") when it applied for a trademark in the term. *Id.* Carpal Therapy contends that these misstatements constitute the basis for fraud because TherapyCare could not have acquired secondary meaning in the "Graston Technique" mark because TherapyCare was not the exclusive user of the mark during the relevant period. *Id.*

Although TherapyCare disputes the applicability of Rule 60(b)(3) to the consent judgment, it also argues that there was no fraud either in its application to the PTO or in this Court. In this Court specifically, TherapyCare avers that Carpal Therapy asserted an invalidity defense prior to negotiating the consent judgment when it responded to TherapyCare's motion for preliminary injunction, therefore, its arguments now could have and should have been taken into consideration when the consent judgment was negotiated. Moreover, TherapyCare argues that its statements in this Court and in the PTO regarding its exclusive use of the term "Graston Technique" for the

relevant period was true because all that is required is "substantially exclusive" use. As of the date of the trademark application, May 3, 2002, its use of the mark had been "substantially exclusive." Finally, TherapyCare argues that pursuant to Rule 60(b)(3), the fraud must be relevant to the basis for the judgment sought to be vacated. Here, TherapyCare asserts, there is no evidence that the consent judgment depended upon its ownership of a Principal Register registration for "Graston Technique."

The Court agrees with TherapyCare that there is no basis to set aside the judgment pursuant to Rule 60(b)(3). Rule 60(b)(3) states: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reason[] . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . ." Fed. R. Civ. P. 60(b)(3).[4] Under this rule, a party seeking for relief must show that the fraud or other misconduct "affected his ability to present his case, not that [it] would have won had the fraud or misconduct not occurred." *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 536 (7th Cir. 2003) (citing *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995); *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68, 72 (4th Cir. 1981); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (7th Cir. 1978)). Here, the consent judgment was entered into after Carpal Therapy had presented to the Court, and to TherapyCare, its reasons why a preliminary injunction should not issue. Those reasons included a challenge to the validity of the trademark at issue for the reason asserted in the instant motion, and for other reasons related to equitable doctrines such as unclean hands. *See* Def.'s Resp. in Opp'n to Prelim. Inj. ¶¶ 1-9. There

---

[4]The plain meaning of this rule is that any order of the Court, even a consent judgment, may be set aside for the reasons stated in Rule 60(b). For this reason, TherapyCare's argument that Carpal Therapy's motion fails on technical grounds is without merit.

is no reason to think that Carpal Therapy and its counsel did not consider this when they negotiated the terms of the consent judgment.  In other words, there was no attempt to hide anything about the validity of the trademark and Carpal Therapy had notified TherapyCare and the Court that it would challenge TherapyCare's trademark allegations on the basis of invalidity of the mark.  As a result, the Court finds neither that there is a fraud or misrepresentation, nor that Carpal Therapy has met its burden to show that the fraud or misrepresentation present it from arguing its case.

For those reasons, the Court **DENIES** Carpal Therapy's motion to set aside.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's, Carpal Therapy, Inc., Motion to Set Aside Consent Judgment of September 20, 2004 (and Related Subsequent Orders) Under Rule 60(b).

IT IS SO ORDERED this 20th day of October, 2005.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Michelle Kaiser Bray
SOMMER BARNARD ATTORNEYS, PC
mbray@sommerbarnard.com

Paul B. Hunt
BARNES & THORNBURG LLP
paul.hunt@btlaw.com

Mary Jane Frisby
BARNES & THORNBURG
mfrisby@btlaw.com

Arlene Rochlin
arochlin@sbcglobal.net